[No. 30305. Department Two. December 29, 1947.]

ELEANOR SWANSON, *Respondent*, v. ERNEST H. SWANSON, *Appellant*.[1]

*Scott, Langhorne & McGavick* and *Gail H. Haddock*, for appellant.

*Arthur F. York*, for respondent.

BEALS, J.—The parties to this action intermarried at Tacoma, Washington, May 1, 1946. October 23, 1946, the

[1]Reported in 188 P. (2d) 116.

plaintiff, Eleanor Swanson, filed her complaint asking for a divorce from her husband, Ernest H. Swanson, for alimony in the sum of one hundred dollars a month, for an award by way of attorney's fees, and that certain property be set over to her as her separate estate. In her complaint, plaintiff alleged that the defendant had failed to provide for her; that he was addicted to the use of intoxicating liquors to excess; that he had assaulted plaintiff, and that it was impossible for the parties to live together as husband and wife.

The defendant answered plaintiff's complaint, denying the material allegations thereof, and, by way of cross-complaint, alleging that the plaintiff had demonstrated that she had no affection for the defendant and had subjected defendant to continuous faultfinding, nagging, and criticism; that, as the result of plaintiff's demeanor toward defendant, it was impossible for the parties longer to live together as husband and wife. The defendant prayed that he be granted a divorce, and that the property of the parties be equitably divided between them.

Plaintiff having answered the defendant's cross-complaint, the action came on regularly for trial. After the taking of considerable testimony, the court made findings of fact and conclusions of law, and entered an interlocutory order granting a divorce to each party, awarding practically all of the property to the plaintiff, directing that the defendant pay certain community obligations, that he pay to plaintiff the sum of one hundred twenty-five dollars on account of her attorney's fees in the action, and granting plaintiff judgment against defendant for her costs. The court also permanently enjoined the defendant from threatening or molesting plaintiff.

The defendant has appealed from the interlocutory order, and presents the following assignments of error:

"(1) The Court erred in finding the plaintiff had contributed more than $6,000.00 of her separate funds which was used in the construction and furnishing of their home and payment of community obligations.

"(2) The Court erred in finding the reason for the marital difficulties of the parties to be the excessive use of intoxi-

cants by the defendant and that the plaintiff did nothing to cause the breakup of their home.

"(3) The Court erred in denying defendant's motion for a new trial.

"(4) The Court erred in awarding all of the property to the plaintiff and ordering the defendant to pay all of the outstanding community obligations and plaintiff's attorney fees and costs."

The testimony on the trial is contained in 214 pages of the statement of facts. It is sufficient to say that the record discloses that the trial court was amply justified in granting the interlocutory order for divorce to respondent and to appellant.

The appellant is a veteran of World War II, and he testified that, at the time of the trial, he was rated by the Veterans' Bureau as having a thirty per cent war disability. Appellant had charged respondent with being insane, and the record contains a complaint in which the respondent charged the appellant with insanity. It appears that neither party was judicially declared insane. Further discussion of the marital difficulties between the parties is unnecessary.

At the time of the marriage of appellant and respondent, each had some money, and it was agreed between them that they would purchase a tract of land and build a home. Appellant testified that he bought, from his sister, four lots located at Parkland, near Tacoma, paying three hundred dollars therefor, and the parties proceeded to erect a house upon the property. The house was never completed, and the testimony indicates that it will cost possibly as much as five thousand dollars to finish it in accordance with the parties' plans. The court found that the real estate and the uncompleted house were worth forty-five hundred dollars, and that the furniture, household goods, and equipment were worth one thousand dollars.

Appellant is a plasterer, earning twenty dollars a day, and, by his labor personally and by exchange with other workmen, contributed to the construction of the dwelling, almost all, however, prior to July 4, 1946.

The trial court found that respondent had contributed from her separate funds "over $6,000.00 in the construction

and furnishing of their home and in the payment of community obligations"; that appellant did not account for a substantial portion of his earnings, and that respondent contributed more than her share for the benefit of the community. The evidence shows that respondent did contribute six thousand dollars, or a little less, toward the building and furnishing of the house, and in liquidation of some community obligations. As to appellant, the court's finding is amply supported by the evidence.

In its oral opinion, the trial court stated that it appeared that respondent had expended, for the benefit of the community, $6,797, but, in its formal findings, the court fixed this amount at "over $6,000.00." The evidence does not support a finding that respondent contributed more than six thousand dollars to the benefit of the community. In addition, the trial court found that the parties had assets as follows: "Defendant's tools of his trade, $50.00; Cash in bank, plaintiff's separate money, $69.00."

Apparently, neither party claimed the existence of any assets of value beyond those enumerated by the court in its findings.

Respondent is a stenographer, having earned good wages, although she testified that she was, at the time of the trial, not able to work; and appellant is an excellent plasterer. Neither party, at the time of the trial, was in good physical or mental condition. There can be no question but that appellant, at times, drank to excess, and, according to his testimony, respondent also occasionally drank more than was good for her. The trial court correctly held that, upon the evidence, each party was entitled to a divorce.

The court found that respondent had been obliged to borrow $175 to pay community obligations. The court made no finding as to the indebtedness of the parties, but, as a matter of law, concluded that the real property, including the house, should be awarded to respondent as her separate property, subject to an account due in the sum of $43.80; that the furniture, household goods, and equipment then on the property should be awarded to respondent as her separate property; that appellant's tools, valued at fifty dollars,

should be awarded to him, and that the cash in the bank, in the sum of sixty-nine dollars, was the separate property of the respondent. The court then concluded that appellant should be ordered to pay community debts aggregating $503.81, and should pay to respondent the balance due for her counsel's fees, in the sum of $125, and that the costs should be taxed against appellant. The interlocutory order of divorce which was entered follows the conclusions of law.

■ Appellant first assigns error upon the court's finding that respondent had contributed to the community "over $6,000.00 . . . in the construction and furnishing of their home and payment of community obligations." From the testimony, the court was justified in finding that the respondent had contributed approximately six thousand dollars of her separate funds for the purposes stated in the court's finding. By far the larger portion of such contribution was definitely shown by the evidence, and the court's finding, as made, is supported by competent testimony. Appellant's testimony as to the amount of his contributions to the marital community was quite indefinite. He doubtless contributed about one thousand dollars in cash, but he kept no accounts, and his testimony as to the matter is unsatisfactory.

Appellant next assigns error upon the court's finding that respondent "did nothing to cause the break up of their home." The court did make that finding, but expressly granted the interlocutory order for divorce to each party. From the record before us, it clearly appears that each party had ample grounds upon which to base an application for divorce.

Appellant also contends that the trial court erred in awarding all of the property to respondent and directing that appellant pay the outstanding community obligations, together with $125 on account of respondent's attorney's fees, and the costs.

■ As above stated, the court made no finding whatever as to any community indebtedness, although, as a matter of

law, it concluded that appellant should pay four items of community debts, aggregating $503.81.

Rem. Rev. Stat., § 996 [P.P.C. § 23-41], reads as follows:

"In all instances where the superior court shall grant a divorce, it shall be for cause distinctly stated in the complaint, and proved, and found by the court, and the court shall state the facts found upon which the decree is rendered; and when either party shall signify a desire to appeal from any of the orders of the court, in the disposition of the property or of the children, the court shall certify the evidence adduced on the trial, and the supreme court shall be possessed of the whole case as fully as the superior court was, and may reverse, modify, or affirm said judgment, according to the real merits of the case."

The above-quoted statute applies only to actions for divorce, and provides that the court shall "state the facts found upon which the decree is rendered." The section, however, further provides that, on appeal, this court "shall be possessed of the whole case as fully as the superior court was, and may reverse, modify, or affirm said judgment, according to the real merits of the case."

Pursuant to the foregoing section, this court may search the record and supply such an omission in the findings of fact as is here apparent. That the community indebtedness above referred to exists, is shown by the record.

■ In adjusting financial matters between the parties, the trial court was faced with a difficult problem. Respondent is left with an unfinished house, which must either be completed at considerable expense or sold at a sacrifice. Respondent has earned good wages as a stenographer, but testified that her physical condition, at the time of the trial, was bad, and that her earning capacity was impaired. While appellant has a disability rating of thirty per cent, it appears that he was able to work at his trade for good wages.

Appellant argues that the record shows that he must have contributed to the community project a substantial amount of money, but his testimony does not support this contention, save as stated above. Appellant's financial contribution to the community, including his labor, was much less than respondent's. From the record, it cannot be held

that the order of the trial court, awarding the property to respondent and requiring appellant to pay the community indebtedness, together with the balance of the sum due from respondent to her counsel, and costs, should be reversed or modified.

Finally, appellant contends that the trial court erred in denying his motion for a new trial. Appellant's motion is contained in the transcript and was based upon the following grounds:

"(1) That the Court abused its discretion and prevented the defendant from having a fair trial.

"(2) That the award of the Court to the plaintiff was so excessive as unmistakably to indicate that the verdict must have been the result of prejudice.

"(3) That there is no evidence or reasonable inference from the evidence to justify the decision and that it is contrary to law.

"(4) Error in law occurring at the trial which resulted in the admission of evidence which should not properly have been introduced."

Appellant, in his affidavit filed in support of his motion for a new trial, the affidavit being a portion of the statement of facts, stated that, because of respondent's conduct, appellant caused her to be hospitalized, and that he asked for an insanity hearing in her case; that the Honorable Ernest M. Card, who heard the divorce case between these parties, presided at the insanity hearing and found that respondent was sane and directed that she be discharged; that appellant did not know Judge Card by name, and did not understand that the divorce case had been assigned for trial before the department over which Judge Card presided, and that Judge Card, because of the impressions gained by him in the insanity hearing, was prejudiced against appellant and could not give appellant a fair and impartial trial.

It appears from the statement of facts that, during the course of its oral opinion, the court referred to the fact that the trial judge and two doctors had investigated respondent's sanity, pursuant to appellant's complaint, and had determined that respondent was sane. After the presentation of appellant's motion for a new trial, the court delivered an

oral opinion stating that, while respondent, some years previously, had been employed in the office of the clerk of the superior court for Pierce county, the trial judge had not remembered her, and that the judge did not recognize respondent as the person who had been charged with insanity, as set forth above, until after the trial had commenced. The court stated that its decision in the case at bar was based upon the evidence, and that the court was not influenced by any prejudice for or against either party. The trial court denied appellant's motion for a new trial.

We find no basis in the record for holding that appellant's motion for a new trial should have been granted upon the ground that the trial court was anywise prejudiced against appellant and that, by reason of this prejudice or otherwise, appellant was prevented from having a fair trial. Appellant's assignment of error, based upon the denial of his motion for a new trial, is without merit.

The facts as stated, namely, that appellant had complained that his wife was insane, and that the judge presiding at the trial, together with two physicians, had found the complaint ill-founded, should not, and, the record indicates, did not, cause any prejudice in the mind of the court against appellant nor anywise prevent appellant from having a fair trial. The court also knew that respondent had charged appellant with being insane, and that that complaint, in turn, had been found baseless, although appellant had been sent to a veterans' hospital where he remained for a short time.

It is evident that the trial court gave careful consideration to the evidence before rendering its decision. Respondent was not awarded alimony, and the interlocutory order finally determines the marital and financial relations of the parties.

In considering the omission of any finding as to the indebtedness of the parties, we are not unmindful of Rem. Rev. Stat. (Sup.), § 988 [P.P.C. § 23-15], concerning the entry of interlocutory orders in an action for divorce, in which section is found the following:

" . . . at the conclusion of the trial the court must make and file findings of fact and conclusions of law. . . ."

This section is a portion of Laws of 1933, chapter 112, p. 432, while § 996, *supra*, is found in Laws of 1860, p. 320, and in the Code of 1881, § 2011.

We are, as above stated, of the opinion that this court may, upon reviewing on appeal an interlocutory order of divorce, search the record and, in the light of the evidence, pass upon such a matter as is here presented, concerning which there was no dispute in the evidence, even though there is no direct finding covering the same but merely a conclusion of law.

The trial court was faced with an extremely difficult situation in determining the property rights of the parties to this action, and, evidently, gave careful consideration to the adjustment made by the interlocutory order. The arguments advanced by appellant do not convince us that that order should be changed, and the interlocutory order for divorce appealed from is, accordingly, affirmed.

MALLERY, C. J., STEINERT, ROBINSON, and JEFFERS, JJ., concur.